UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:                                                     Chapter 11

HIGHGATE MANOR GROUP, LLC,                                 Case No.:

                              Debtor.

-----------------------------------------------------------------x

## Company Resolution

        The Managing Members of Highgate Manor Group LLC (the "Company") having

determined that the following Resolution is in the best interests of the Company, it was:

        RESOLVED, that the management of the Company is authorized
        and empowered to cause the filing on behalf of the Company, of a
        petition under Chapter 11 of the United States Bankruptcy Code
        and that the same is in the best interests of the Company and its
        creditors; that the managers of the Company are to take all
        necessary and proper steps in connection with the filing of the
        Chapter 11 petition aforementioned, including the retention of the
        law firm of FINKEL GOLDSTEIN ROSENBLOOM & NASH,
        LLP, as attorneys for that purpose;

        FURTHER RESOLVED, that Eugene Nachamkin is hereby
        authorized to execute all documents in connection with the filing
        of a Chapter 11 petition and all ancillary documents with reference
        thereto.

Dated: New York, New York
        April  6 , 2007

                              HIGHGATE MANOR GROUP, LLC

                              By: _____
                                  AARON SELIGSON, Managing Member

**BOB GREEN**
ATTORNEY AT LAW
P.O. BOX 908
ONE HARRIMAN SQUARE
GOSHEN, NEW YORK 10924
bobgreen8@optonline.net

FAX 294-3994                                                                     (845) 294-5573

April 12, 2007

Finkel, Goldstein, Berzow, Rosenbloom & Nash
26 Broadway, Suite 711
NYC, NY 10004
*Att: Ted Donovan, Esq.*

Re:   Attorney Opinion Letter re the filing of a Chapter 11 by
Highgate Manor Group, LLC and
Highgate LTC Management, LLC.

Dear Mr. Donovan:

This attorney opinion letter is being delivered pursuant to your request, the contents of which we have previously discussed. Based on the below considerations I believe the entity Resolutions I have reviewed are legally sufficient to authorize the bankruptcy filings.

In preparing this opinion letter I have acted as legal counsel to Highgate Manor Group, LLC (herein "Highgate Manor") and its members Eugene Nachamkin, Dianna Koehler-Nachamkin and Highgate LTC Management, LLC (herein "Highgate Management") and its members Eugene Nachamkin, Dianna Koehler-Nachamkin. I have also consulted with Highgate Manor's members Longview Horizons, LLC (by its managing member Aaron Seligson) and Patricia Bruder. I have not consulted with nor acted as counsel to the purported members Howard Krant (herein "Krant") or Scott Bialick (herein "Bialick"). Both Highgate Manor and Highgate Management are collectively referred to herein sometimes as "Highgate".

In connection with this letter I have relied upon factual representations made to me by members of the Companies, have reviewed the Operating Agreements, a subsequent Amendment to the Highgate Management Operating Agreement and certain operative loan default notices which were not cured resulting in the automatic removal of Krant as a Managing Member.

Most importantly, I have also reviewed certain litigation documents and financial information provided to me with respect to more than $1,710,000. allegedly embezzled by Krant and Bialick from an accounting client of theirs (Mrs. Graber) and used by Krant and Bialick as their alleged capital contribution to become members in Highgate.

Following litigation by the alleged victim (Mrs. Graber) against her accountants Krant and Bialick who allegedly invested the money in Highgate, more than $814,977. of the allegedly stolen money was repaid by Highgate to Mrs. Graber (in effect the "return" of Krant and Bialick's Capital Contribution as detailed below). Thus Krant and Bialick's membership or equity interests were "bought back" by Highgate leaving Krant and Bialick with no capital

contribution or investment. Accordingly I believe the other members have a valid position that Krant and Bialick have no equitable interest in Highgate, should not be accorded membership status and the Operating Agreements do not apply to them.

Annexed hereto is a Summons and Verified Complaint which speaks to the facts of the alleged embezzlement by Krant and Bialick and their investment of that money into Highgate. Also annexed hereto is a Settlement Agreement in which Krant and Bialick agreed to repay Mrs Graber $1,710,488. of which Highgate repaid the alleged victim $814,977.

Further, with respect to Highgate Manor, under the terms of its Operating Agreement, specifically Paragraphs 8.1 & 8.2, Krant, and Aaron Seligson (Seligson being the Managing Member of Longview Horizons, LLC, which entity is a member of Highgate Manor) were designated Managing Members in which the management of the company was vested. But Paragraph 8.9 of the Operating Agreement provides that in the event of the Company's default in payment of certain financial obligations (which default occurred over one year ago and has not been cured), Krant would be deemed to have automatically resigned as a Managing Member and replaced by Pat Bruder (who delegated her powers in writing to Seligson). I have met with both Seligson and Bruder and they wish to proceed with the Chapter 11 filing. Accordingly Seligson as the Managing Member has the authority to authorize the Chapter 11 petition.

With respect to Highgate Management, under the terms of its Operating Agreement dated May, 1999, specifically paragraph 4.2 thereof, Eugene Nachamkin is appointed the Principal Manager. Further, in the subsequent Amendment to the Operating Agreement (dated March, 2000), each member is authorized to act or perform on behalf of the company without the other members. Thus Eugene Nachamkin can authorize the filing of a Chapter 11, especially in light of the fact that Krant and Bialick have no equitable interest or capital contribution to substantiate their alleged membership interest.

Previous counsel to both Companies has opined that neither Company could take any action whatsoever, including terminating his retention as legal counsel, without Krant and Bialick unanimously agreeing with all the other members on any issue. He has opined that until there is unanimity to terminate his retention, his firm is, in effect forever retained. But such opinion:
a)      ignores the language in the Highgate Manor Operating Agreement in which Krant was deemed removed as a Managing Member;
b)      ignores the language in the Highgate Management Operating Agreement in which Eugene Nachamkin is appointed the Principal Manager as well as the subsequent Amendment to the Operating Agreement in which each member is authorized to act or perform on behalf of the company; and
c)      ignores the fact that Krant and Bialick's capital contribution was re-purchased by Highgate by its payment to Mrs. Graber of Krant and Bialick's investment money.

I have been provided with the detailed financial information set forth below with respect to Krant and Bialick's alleged embezzled investment money (used as their capital contribution to Highgate and the repayment of that investment money by Highgate to Mrs. Graber). This financial information was provided to me by the Principal Manager Eugene Nachamkin.

I point out that Mr. Nachamkin is a former New York State Department of Health Auditor, that he has an MBA in Accounting and has over 36 years of financial experience in the nursing home industry. Most importantly, these financial numbers are compiled from the companies books and records compiled or maintained by Krant and Bialick who are accountants. In addition, annexed hereto are some of the litigation papers I have reviewed in connection with the alleged embezzled investment funds.

## Krant and Bialick Capital Contributions:

| | | |
|---|---|---|
| Transfer from KBL (Krant and Bialick's Accounting Firm) | = | $ 497,740. |
| Financing Fee allegedly paid by KBL | = | $ 15,000. |
| Accounting Fee due KBL (unsubstantiated, DISPUTED) | = | $ 60,000. * |
| Expenses paid by KBL (unsubstantiated, DISPUTED) | = | $ 22,442. |
| Accounting adjustment (unknown) | - | $ ( 7,682.) |
| Transfer from Priority Pharmacy (not Krant/Bialick's money, just borrowings from an entity related to Highgate) | = | $ 125,000. ** |
| Subtotal of Krant and Bialick's investment | = | $ 712,500. |
| Additional Investment (source unknown) | + | $ 175,000. |
| Krant and Bialick ALLEGED Capital Contribution | = | $ 887,500. |
| Less DISPUTED SUMS ABOVE | - | $ 185,000. (* + **) |
| **Net Capital Contributions by Krant & Bialick** | = | **$ 702,500.** |

## Return of Krant & Bialick's Capital Contribution (paid by Highgate Manor and Highgate LTC Management to Mrs. Graber as a settlement of the alleged embezzlement litigation):

| | | | |
|---|---|---|---|
| 12/3/04 | from Highgate Management | = | $ 150,000.00 |
| 12/16/04 | from Highgate Management (Citibank account) | = | $ 46,000.00 |
| 12/30/04 | from Highgate Management (Citibank account) | = | $ 46,707.36 |
| 1/21/05 | from Highgate Management | = | $ 100,000.00 |
| 1/31/05 | from Highgate Management (Charter One Bank) | = | $ 46,707.36 |
| 2/28/05 | from Highgate Management (Citibank account) | = | $ 46,707.36 |
| 3/31/05 | from Highgate Manor | = | $ 46,707.36 |
| 4/28/05 | from Highgate Manor | = | $ 46,707.36 |

| 5/27/05 | from Highgate Manor | = | $ 46,707.36 |
| 6/29/05 | from Highgate Manor | = | $ 46,707.36 |
| 7/29/05 | from Highgate Manor | = | $ 46,707.36 |
| 8/31/05 | from Highgate Manor | = | $ 46,707.36 |
| | Sub-Total | | $ 716,366.24 |

| Additional Payment from Highgate Manor to Graber | = | $ 64,225.00 |
| Additional Payment from Highgate Manor to Graber | = | $ 34,386.00 |
| (payments made between 5/31/01 to 6/30/04) | | |

**Total Payments from Highgate entities to Graber**   =   **$ 814,977.24**

Other payments to Graber believed to have come from the Highgate Entities:

| 12/16/04 | Undesignated payment | = | $ 707.36 |
| 1/21/05 | from Krant to Graber | = | $ 100,398.40 |

**Total Payments to alleged victim (Graber)**   =   **$ 916,083.32**

**In summation:**
**Krant & Bialick's total net Capital Contribution**   =   **$ 702,500.00**

**Repayment from Highgate entities to Mrs. Graber**   =   **$ 814,977.24.**

**Excess payment for the benefit of Krant
and Bialick over and above Equity Investment**   =   **$ 112,477.24**

It is my belief that Krant and Bialick relinquished all equitable interests in both Highgate entities and should not be considered members as they have no investment or capital contribution in the Companies.

Finally, Management of Highgate Manor and Highgate Management believe that the rapid return by the Companies to Mrs. Graber of Krant and Bialick's alleged embezzled funds exacerbated the Companies financial difficulties and led to the current lender foreclosure situation.

As if this were not enough, Highgate Manor and Highgate Management have documentation that $588,615. is unaccounted for from a certain Highgate Manor bank account. The subject account was under the sole control of Krant and Bialick. The members wish this investigated under the jurisdiction of the bankruptcy court.

Following the embezzlement lawsuit the other members of both Companies continued to treat Krant and Bialick as members of the Companies for the sake of avoiding unnecessary litigation at a crucial time when attention needed to be focused on the continued financial viability of the companies. But the members never released their rights or claims against Krant and Bialick or their rights to challenge Krant and Bialick's equitable interests.

I would expect that in the bankruptcy forum the entities can seek their financial damages as against Krant and Bialick which resulted from the repayment by the entities of the Krant and Bialick investment moneys as well as a determination of whether Krant and Bialick have any equitable ownership interests in the entities due to the return to Mrs. Graber of the Krant and Bialick capital contributions. Also Highgate can investigate the missing bank account funds.

In my examination of all papers to reach the above conclusions, I have assumed: (i) the authenticity of all documents including litigation pleadings provided to me by members; (ii) that there are no other oral or written agreements outside of the documents I have examined; and (iii) the accuracy and completeness of all company records provided to me.

During the course of my representation, no information has come to my attention which would give me knowledge of the existence or absence of such facts which would alter this opinion letter. However, I have not undertaken any independent investigation to determine or verify the existence or absence of such facts.

Debtors are New York Limited Liability Companies duly organized and validly existing under the laws of the State of New York and have all requisite power and authority to execute papers in connection with the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure and to file a Chapter 11. Based on all of the above, the execution and filing of Chapter 11 bankruptcy papers will not (a) conflict with, result in a breach of, or constitute a default under, any of the terms, conditions or provisions of (i) any present State or Federal statute, rule or regulation applicable to the Parties; (ii) the articles of organization or operating agreements of each Company; (b) to my knowledge (i) violate any term of any agreement or instrument by which the Companies are bound, (ii) nor violate any order, judgment or decree of any court. Further, to my knowledge, no Department of Health or other governmental consents, approvals or authorizations are required by the Company to proceed with the filing of a Chapter 11.

The foregoing expresses my legal opinion as to the matters herein based upon my professional knowledge and judgment at this time and specifically based on all of the above considerations. Further, my legal opinion is not to be construed as a guarantee, nor is it a warranty that a court considering any matters herein would not rule contrary to my opinion.

The opinions set forth herein are rendered solely to the Highgate entities and are solely for their benefit in connection with their Chapter 11 filing and related purposes as set forth herein. This letter is neither to be quoted in whole or in part or otherwise referred to in any financial statements or other public release(s), nor is it to be filed with any governmental agency or entity. This letter may not be delivered to or relied upon by any entity or agency for any purpose without the prior written consent of my firm.

Sincerely,

Bob Green, Esq.